## MARYLAND CASUALTY CO v FOUCHE
## LYNETT v FOUCHE et
## WOODWARD v FOUCHE et
## PREASE v FOUCHE et

Ohio Appeals, 9th Dist, Summit Co

Nos 2179, 2181, 2182 & 2183.

Decided July 26, 1933.

*Application of defendant in error Ruth Fouche for a rehearing denied August 18, 1933

Slabaugh, Seiberling, Huber & Guinther, Akron, for plaintiff in error Maryland Casualty Co.

G. H. Doolittle, Director of Law, Akron, and A. H. Johnson, Asst. Director of Law, Akron, for plaintiffs in error and defendants in error Thomas F. Lynett, Robert S. Prease and James T. Woodward.

Gottwald, Breiding & Hinton, Akron, for defendant in error Ruth Fouche.

FARR, J, (7th Dist) sitting in place of WASHBURN, PJ.

## OPINION

By FARR, J.

Are the verdicts and judgments excessive?

The facts of interest are that Thomas F. Lynett, a sergeant on the police force of the city of Akron, held a warrant, duly issued, for the search of certain premises situated on North Hawkins Avenue just north of a railroad track in the city of Akron. He was also the head of that which is known as the "vice squad."

Upon the receipt of such warrant, he called to his assistance James T. Woodward and Robert S. Prease, who were also members of the vice squad in said city. Together these officers drove in an automobile to the residence of defendant in error Ruth Fouche, who resided in the first house north of Medina road in said city.

Upon reaching said premises, the officers alighted from the car, approached the residence, and, they claim, knocked upon the door and were invited to enter; except Mrs. Fouche denies that she invited them into her home. When inside, and after some deliberation, attention was called to the fact that these were not the premises described in the search warrant, and after a brief conversation the officers left her home and went to the premises situated and known as the first house north of said railroad.

Mrs. Fouche claims that, upon being advised that these officers desired to search her premises for contraband liquor, she suffered a severe shock to her nervous system; that thereby the processes of nature, in the way of the disturbance of the menstrual period, were affected so that such periods became more frequent and were much longer in duration than is according to the laws of nature. She says also that she was a music teacher, and that she feared that the knowledge of such visitation by said officers might injure her patronage in that behalf, although there is no testimony of such injury.

Each of these police officers had given bond for the faithful performance of his duty—Thomas F. Lynett giving as surety the Equitable Casualty Co. of New York,

James T. Woodward the Southern Surety Co. of Des Moines, Iowa, and Robert S. Prease the Maryland Casualty Co.; and upon the trial below, separate verdicts were rendered against these surety companies; in the case of Lynett in the sum of $1,000, in the cases of Woodward and Prease in the sum of $583 each, and then a joint verdict against Lynett, Woodward and Prease in the sum of $2166; and these proceedings in error are to reverse all of these judgments.

It does not now become a matter of important concern as to the manner of the rendition of these verdicts, because no question is raised in that behalf—error being prosecuted by each of the police officers, and by the Maryland Casualty Co. only so far as the sureties are concerned.

The record discloses, by the testimony of Mrs. Fouche, that she suffered, as above stated, the different things enumerated by her, including nervous shock, etc. Her family physician was called, who practically corroborated her in her statements as to her condition, and it is asserted that all these ailments are the result of the shock occasioned by these officers.

In behalf of the defendants, it is disclosed by the testimony of Lynett that, upon going to the house, he knocked upon the door and was bidden by Mrs. Fouche to enter; that he advised her of the purpose of the visit; that while he and Mrs. Fouche were engaged in a very short conversation, one of the other officers went to the cellar, and perhaps the other one to the kitchen, and the report was, that no intoxicating liquor was found. Lynett claims that when he advised her of the purpose of his visit, she told him that there was nothing of that kind about the premises and that he was welcome to make the search.

There is not a scintilla of evidence in the record, all of which has been read, that these officers in any way offered any insult or unkindness to Mrs. Fouche or were guilty of any rude conduct whatsoever. It is disclosed that one of the officers said "We are sorry that we made a mistake, lady." By all of the testimony it is shown that they remained but a short time, and that they left in an orderly manner.

Mrs. Fouche claims that just as the officers went away, she sank into a chair and that everything became a blank or "dark."

How improbable it seems that, after the respectable conduct of these officers, aside from any mistake which was made, Mrs. Fouche should suddenly—almost instantly—collapse and sink into a chair. As a general proposition, it seems wholly improbable that the conduct of these officers, about which there is not so much dispute, could have resulted in such condition so far as Mrs. Fouche is concerned. The conclusion is therefore that, if this condition of health obtained, it must have arisen from some other cause or causes. And having reached this conclusion, the finding must be that these verdicts and judgments are so excessive as to require a reversal on that ground, and this conclusion seems to be so fully sustained by the testimony that there will be no suggestion of a remittitur, because it is believed that the testimony could not sustain a verdict in such an amount, and these verdicts are therefore found to be excessive.

The first complaint is that of error in the charge of the trial court, and it will be last considered.

It is urged that the trial court erred in its refusal to give plaintiff in error Maryland Casualty Co.'s request to charge No. 1. It is not necessary to here repeat the same. It rests upon the theory that these two police officers would be subject to the orders of their superior officer, and this is the correct principle; else superiority of rank would be meaningless. They would be subject to his orders insofar as they were regular and in compliance with law; they would not, of course, be required to obey any command to do an unlawful act, but it is not claimed or shown in any way that such was the case, for everything was harmonious about the Fouche home during the very short stay of these officers. It follows, therefore, that request to charge No. 1 of said plaintiff in error should have been given, and for the same reason the paragraph in the general charge at page 106 of the record, as set out in the brief of said plaintiff in error, is erroneous.

Some further criticisms are suggested as to the general charge. However, while perhaps subject to some criticism, yet standing alone, these matters would not be sufficient to reverse the judgments.

Therefore, because of the excessive verdicts and error in the charge of the trial court as above stated, the judgments are reversed and the causes remanded.

Judgments reversed.

FUNK and STEVENS, JJ, concur in judgment.